# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | 21-63-SDD-SDJ |
| LESLIE AMANDA MCHUGH | |

## RULING

This matter is before the Court on the *Motion for Compassionate Release Pursuant to the First Step Act of 2018*[1] filed by Defendant, Leslie Amanda McHugh ("Defendant"). The Government filed a *Response in Opposition.*[2] For the following reasons, Defendant's *Motion* will be DENIED.

## I.    BACKGROUND

On October 30, 2023, Defendant was committed to the custody of the Bureau of Prisons ("BOP") to be imprisoned for a total term of twelve (12) months and one (1) day after pleading guilty to one count of conspiracy to defraud the Government and to pay and receive kickbacks in violation of 18 U.S.C. § 371.[3] Defendant was also indicted on three counts of solicitation and receipt of kickbacks and bribes in connection with a federal health care program, all of which were dismissed at sentencing and pursuant to the plea agreement entered into between Defendant and the Government.[4] Since her

---

[1] Rec. Doc. 124.
[2] Rec. Doc. 128.
[3] Rec. Docs. 93, 103, 121.
[4] Rec. Doc. 1.

incarceration date, McHugh has remained (and is currently) incarcerated at the Federal Correctional Institution, Marianna (FCI Marianna) in Marianna, Florida. On January 19, 2024, Defendant submitted a request for compassionate release/reduction in sentence, supported by medical records, to the appropriate officer at her correctional facility, and that request was denied by the warden on January 24, 2024.[5]  Having exhausted her administrative remedies, Defendant now moves this Court for compassionate release, arguing that her family circumstances present an extraordinary and compelling reason to support her release.[6]

The Government opposes Defendant's motion.  While the Government concedes Defendant has exhausted her administrative remedies,[7] it argues she has failed to present extraordinary and compelling reasons for her compassionate release because she fails to satisfy the statutory requirements.[8]  Further, the Government contends that the sentencing factors set forth in 18 U.S.C. § 3553(a) do not support Defendant's release.[9]

## II.    LAW & ANALYSIS

Under 18 U.S.C. § 3582(c), a court generally "may not modify a term of imprisonment once it has been imposed," except in three circumstances: (1) upon a motion for reduction in sentence under 18 U.S.C. § 3582(c)(1)(A); (2) "to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure"; and (3) where the defendant was sentenced based on a retroactively

---

[5] Rec. Doc. 124-1.
[6] Rec. Doc. 124-3.
[7] Rec. Doc. 128, p. 3.
[8] *Id.* at pp. 6-9.
[9] *Id.* at pp. 9-10.

lowered sentencing range.[10]  Here, Defendant moves to modify her sentence under 18 U.S.C. § 3852(c)(1)(A). Under § 3582(C)(1)(A)(i), a court may reduce a prisoner's sentence if it finds that (1) "extraordinary and compelling reasons warrant such a reduction," and (2) the reduction is "consistent with applicable policy statements issued by the Sentencing Commission."[11] However, for a court to entertain such a motion, a defendant must first exhaust administrative remedies.[12]

### A.    Exhaustion of Administrative Remedies

The exhaustion requirement is satisfied if "the defendant has fully exhausted all administrative rights to appeal a failure of a Bureau of Prisons to bring a motion on the defendant's behalf" or if 30 days have elapsed "from the receipt of such request by the warden of the defendant's facility."[13]  Under the First Step Act passed in 2018, prisoners may directly petition courts for compassionate release, but they must exhaust administrative remedies before filing such motions.[14] It is undisputed that Defendant exhausted her administrative remedies before filing this motion.

### B.    Extraordinary and Compelling Reasons

Once the exhaustion requirement is satisfied, a defendant must demonstrate "extraordinary and compelling reasons [that] warrant [] a reduction" and "such a reduction [must be] consistent with applicable policy statements issued by the Sentencing Commission."[15] In the Sentencing Commission's policy statements, the Commission

---

[10] *See generally* 18 U.S.C. § 3582; *see United States v. Hilon*, 2021 WL 4163567, at *1 (M.D. La. Sept. 13, 2021).

[11] 18 U.S.C. 3582 (c)(1)(A)(i).

[12] *Hilon*, 2021 WL 4163567, at *1.

[13] 18 U.S.C. § 3582(c)(1)(A).

[14] *Id.*

[15] 18 U.S.C. § 3582(c)(1)(A); *Hilon*, 2021 WL 4163567, at *1.

identifies three specific reasons that are considered "extraordinary and compelling" along with a broader catchall provision, which are: (1) medical condition of the defendant; (2) the defendant is experiencing deteriorating physical or mental health because of the aging process; (3) family circumstances; and (4) other reasons as determined by the Director of the Bureau of Prisons.[16] In *United States v. Shkambi*, the Fifth Circuit held that "neither the policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582;" however, the policy statement is relevant to inform a district court's analysis as to what reasons may be "extraordinary and compelling" to merit compassionate release.[17]  Application note 1 to the Policy Statement provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant.—
>
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
>
> (ii) The defendant is—
>
> (I) suffering from a serious physical or medical condition,
> (II) suffering from a serious functional or cognitive impairment, or
> (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> (B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health

---

[16] U.S.S.G § 1B1.13.
[17] *United States v. Shkambi*, 993 F.3d 388 (5th Cir. 2021); *see also Hilon*, 2021 WL 4163567, at *2.

because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.—

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

Generally, the defendant has the burden to show circumstances meeting the test for compassionate release.[18] Here, the only applicable "extraordinary and compelling reason" is "(C) Family Circumstances" and/or "(D) Other Reasons."

In Defendant's request, she presents medical records and other documentation demonstrating that her minor daughter Jolene suffers from various developmental delays and requires special needs accommodations at school.[19] Defendant contends her ten-year-old daughter's mental and physical abilities are equivalent to those of a five or six-year- old child.[20]  Jolene's many diagnoses cause her husband, John Rosenboom ("Rosenboom"), to accompany her to see neurologists, endocrinologists, psychologists, geneticists and to go to physical, occupational, and speech therapies and undergo testing regarding her disabilities.[21] Before Defendant's incarceration, she was able to work from home, which allowed her to attend to Jolene's many appointments; however, now that Rosenboom is "the only caregiver and source of income for his family," "he has since

---

[18] *United States v. Heromin*, 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019) (emphasis added).
[19] *See* Rec. Doc. 124-1, pp. 8-25.
[20] Rec. Doc. 124-3, p. 5.
[21] *Id.*

struggled to manage, provide, and tend to all of Jolene's medical needs, school needs, and transportation needs while having to still maintain a full-time job and be the only source of income to support his family."[22]  Defendant further contends that neither she nor Rosenboom have any family members who live locally that can assist with Jolene's medical needs, school needs, and transportation needs."[23]   Moreover, Jolene has purportedly declined over the months of Defendant's incarceration.[24]

The Government opposes Defendant's motion.  The Government does not challenge Jolene's diagnoses or special needs.  However, under the applicable statutes and jurisprudence, the Government maintains Defendant has not demonstrated that the alleged facts, taken as true, qualify as extraordinary or compelling reasons.  The Government acknowledges that Defendant's incarceration has placed a heavy burden on her spouse and family, as it does in practically every similar situation, but Defendant ignores the record in this case reflecting that there are other family members ostensibly available to help besides Rosenboom.  The Government points out that neither Defendant nor Rosenboom have explained why no other family members are able to provide assistance, particularly since the record reflects that Jolene's paternal grandmother attended her annual IEP review meeting in December 2023 at school,[25] and Defendant told this Court at sentencing that she had a good relationship with her parents who also reside in Florida.[26]  The Government further notes that the Court allowed Defendant to self-surrender, and granted an extension of that date, providing her with sufficient time to

---

[22] *Id.* at p. 6.
[23] *Id.*
[24] *Id.* at pp. 6-7.
[25] Rec. Doc. 124-1, p. 22.
[26] Rec. Doc. 83-1; Rec. Doc. 68, p. 14.

make appropriate arrangements for her family.[27]

The Court finds that Defendant has failed to demonstrate extraordinary and compelling reasons to grant compassionate release. While the Court is mindful of the burden Defendant's crime and incarceration has placed on her family, it is the Defendant's conduct that placed such burdens. Moreover, even if Rosenboom is the only available caregiver to provide for Jolene's needs, case law forecloses the requested relief. In *United States v. Sam*, the defendant moved for compassionate release on the same grounds asserted herein – to care for his children, his mother, and his grandmother.[28] Regarding his children, the defendant argued that his wife had contracted COVID-19 twice, but her provided no argument or evidence that his wife was left incapacitated or unable to care for their minor children.[29] In *United States v. Barrios*, the defendant moved for compassionate release, in part, on the grounds that her 75-year-old father was in general poor health and the only caregiver to her four minor children.[30] The court denied the defendants request after applying the applicable BOP policy statement and jurisprudential standards on this issue:

> For the purposes of determining whether a defendant is entitled to compassionate release, Bureau of Prisons ("BOP") Program Policy Statement 5050.50 states that a "family member caregiver" is incapacitated if he has "suffered a severe injury (*e.g.*, auto accident) or suffers from a severe illness (*e.g.*, cancer) that renders the caregiver incapable of caring for the child." BOP Program Policy Statement 5050.50, *Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*, at 7 [hereinafter "Policy Statement 5050.50]. The Policy Statement requires the defendant to provide "verifiable medical documentation of the [caregiver's] incapacitation." *Id*. Although Policy Statement 5050.50 does not bind courts considering a compassionate release motion filed by a criminal defendant, courts in this Circuit and

---

[27] Rec. Doc. 103.
[28] No. 17-83, 2020 WL 3415771, at *3 (E.D. La. June 22, 2020).
[29] *Id*.
[30] No. EP-20-CR-01838(1)-DCG, 2022 WL 7265985, at *4.

elsewhere frequently consider the Policy Statement when assessing whether to grant a defendant compassionate release. Thus, where a caregiver suffers from an adverse health condition, but that condition is not severe enough to render the caregiver incapable of caring for the defendant's child, courts have generally denied compassionate release. **Courts have likewise denied compassionate release where the defendant does not produce verifiable medical documentation demonstrating that the caregiver is incapacitated, as opposed to merely feeble.**[31]

Here, Defendant does not claim that her husband is incapacitated or severely injured. Defendant likewise fails to provide the Court with any case law where compassionate release was granted under very similar circumstances. The Court found none within the Fifth Circuit. While Rosenboom is clearly heavily burdened by his wife's incarceration, he is not incapacitated or suffering from a severe injury or illness such that it is impossible for him to care for Jolene. Accordingly, Defendant has failed to demonstrate extraordinary and compelling reasons justifying her compassionate release.

### C.    Section 3553(a) Factors

Even if Defendant had demonstrated extraordinary and compelling circumstances, the Court is still bound to consider the sentencing factors set forth in 18 U.S.C. § 3553(a),[32] which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentence available; (4) the kinds of sentence and the sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been

---

[31] *Id.* (footnotes omitted)(emphasis added).
[32] *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *see also United States v. Hossley*, 2021 WL 4314582, at *2 (M.D. La. Sept. 22, 2021).

found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.[33]

Defendant contends that, while serving over four months of her twelve months and one day sentence, she has abided by all rules within the BOP, has not committed any infractions or received any discipline, has secured employment, and has generally exhibited exemplary conduct.  Further, she is a low risk of recidivism and will never again work in the medical field, thus alleviating any risk that she might commit the same crime for which she was convicted.

The Government maintains that, while Defendant presents a low risk of recidivism, her history may suggest at least some risk of similar criminal conduct due to the financial strain the family is under.  Although she only pled guilty to one count of the indictment, Defendant "amassed three criminal history points and fell into criminal history category II" after committing a "string of three separate thefts in May, June, and July of 2014."[34] Further, the Government argued for a guideline sentence for Defendant, which was a range of 15 to 21 months' imprisonment.[35]   However, after considering the Section 3553(a) factors, the Court gave Defendant a variant sentence of twelve months and one day.[36]   Thus, the Government contends Defendant has already received a lesser sentence for the same circumstances she now seeks compassionate release.  Finally, at the time of the filing of her motion, Defendant has served less than half of her sentence.[37]

Based on the Sentencing Commission's guidance, the nature of the offenses, the

---

[33] 18 U.S.C. § 3553(a)(1-7).
[34] Rec. Doc. 128, p. 1 (citing Rec. Doc. 68, pp. 11-13).
[35] Rec. Doc. 68, p. 19.
[36] Rec. Doc. 121, p. 2.
[37] Rec. Doc. 128-1.

criminal history of the Defendant, and the need for the sentence imposed, the sentence reduction already given to the Defendant, and the fact that she has served less than half of her sentence, the Court finds the Section 3553(a) sentencing factors weigh against Defendant's requested relief.

## III.  CONCLUSION

For the foregoing reasons, Defendant's *Motion for Compassionate Release Pursuant to the First Step Act of 2018*[38] is hereby DENIED.

**IT IS SO ORDERED.**

Baton Rouge, Louisiana, this _20th_ day of May, 2024.

> *Shelly Dick*
> SHELLY D. DICK
> CHIEF DISTRICT JUDGE
> MIDDLE DISTRICT OF LOUISIANA

---

[38] Rec. Doc. 124.